The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of the alleged injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employing three or more employees, one of whom was the plaintiff.
2. Plaintiff's average weekly wage was $580.00 at said time.
3. Defendant-employer is a duly qualified self-insurer with NATLSCO Kemper Insurance Company as its servicing agent.
4. Plaintiff acquired carpal tunnel syndrome in both his left and right arms and hands as a result of causes and conditions of his employment and the defendant admits and stipulates that the plaintiff's carpal tunnel syndrome is causally related to his employment, that due to the repetitive nature of his employment he was placed at a greater risk of contracting carpal tunnel syndrome than members of the public in general, and defendant admits liability for the compensable consequences of plaintiff's carpal tunnel syndrome if, in fact, there are any compensable consequences.
* * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner with the addition of Finding of Fact Number 21, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff was born May 23, 1942. He has a high school education and he initially went to work with defendant-employer on July 5, 1975. Both plaintiff and his wife work for defendant-employer. They have worked for defendant-employer in both North Carolina and Virginia.
2. Plaintiff worked in the spinning department and later worked in the packaging department.
3. In March, 1991, plaintiff started having problems with numbness and tingling and pain in his hands and fingers. As a result of these problems, plaintiff saw the company nurse and was referred to the plant physician. Plaintiff was treated at Eastern Neurology where he was diagnosed with carpal tunnel syndrome.
4. On June 17, 1991, defendant filed a Form 19 with the North Carolina Industrial Commission, noting that the plaintiff suffered from carpal tunnel syndrome as a result of his repetitive wrist movement, tying all the packages, warping thread line on package for start up, removing full packages from machine, and replacing full packages with empty tubes.
5. Defendant-employer paid the medical expenses that plaintiff incurred once he began being examined and receiving treatment for his carpal tunnel syndrome.
6. Plaintiff's problems with his hands and wrists continued to worsen, so that in January and February of 1992, defendant-employer, at the suggestion of its medical department, changed plaintiff's job so that he was doing clerical-type work and handling various paperwork tasks and running errands.
7. In June and July of 1992, plaintiff's work description was changed again at the request of management, and he was placed on a tow-pack operator job. Plaintiff stayed on this job until September or October of 1992. He continued to experience pain in his hands and wrists since this job was one in which 80 to 85 percent of the time was continuous use of his hands.
8. In September or October of 1992, plaintiff was assigned a job in the DTFY spinning area. This job was the robotics' operator. Management of plaintiff felt that the robotics' job would be the easiest job for plaintiff to do in light of the problems that he was experiencing with his hands and wrists.
9. Tommy Braxton was section leader in the DTFY spinning area where plaintiff was performing the robotics' operator job. Plaintiff explained to Mr. Braxton that the robotics' job was traumatizing his hands too much and that he could not perform the job, even though it was thought by defendant's management to be light work that the plaintiff could do. Mr. Braxton, in his testimony, indicated that he believed what the plaintiff told him and so he took the plaintiff off this job and told him he would have a period of 30 days in which to assemble his medical records and to present them to the company's corporate office in Wilmington, Delaware, with an application for incapability retirement pension and for benefits pursuant to the total and permanent disability income plan. Plaintiff, after complaining to Mr. Braxton, was sent to William S. Payne, the physician's assistant at defendant-employer. The physician's assistant testified that he personally removed the plaintiff from the PRIN winding job on the first day that the plaintiff came to him complaining of problems with his wrists and that he was familiar with the several job changes that plaintiff had subsequently had. Further, Mr. Payne testified that no permanent restrictions had ever been submitted to defendant-employer with respect to the plaintiff and his carpal tunnel syndrome, but that when it was apparent that plaintiff was unable to do the robotics' job, Mr. Payne removed him from this job and took him out of work and referred him to the medical committee. It was with this referral to the medical committee that plaintiff went on an out-of-work status on November 15, 1992, and he remained on that status until April 15, 1993.
10. Plaintiff was temporarily totally disabled from November 15, 1992 until April 15, 1993, because he had been taken out of work by the medical department of his employer.
11. Management of defendant-employer received the plaintiff's application for total and permanent disability benefits, but by letter dated February 4, 1993, denied the plaintiff's application. It was determined by defendant that plaintiff was not permanently incapable of performing duties of available work, namely, the miscellaneous operator job. Defendant arrived at the conclusion that plaintiff's medical records which had been submitted did not support the finding of total and permanent disability, even though plaintiff was taken out of work by defendant's medical department.
12. When plaintiff was notified of defendant's denial of his claim for company disability benefits, he responded to his employer by letter dated March 18, 1993 and specifically requested instructions as to the job that was available to him and to which job he should report. The plaintiff made an attempt with his employer to obtain work. He specifically requested instructions on when he should report for work and what job he would be doing when he reported.
13. When the plaintiff made his initial request to be given disability benefits, no explanation was given to him by his employer about workers' compensation nor the benefits available to him pursuant to workers' compensation, even though defendant was paying his medical expenses and even though they had acknowledged that his carpal tunnel syndrome was due to causes and conditions of his employment. Plaintiff was advised by defendant-employer that the office in Kinston would apply to the office in Wilmington, Delaware for an incapability pension at the plaintiff's request, and he was also informed that if the application for incapability pension was denied that he would then be eligible for a regular pension. Application was made for the regular pension on notification of the denial of the incapability pension. As of April 15, 1993, plaintiff began drawing a regular pension. Plaintiff was never advised that in addition to requesting that he be retired under total and permanent disability with his company that he also had the option of seeking benefits pursuant to the Workers' Compensation Act since he had filed a workers' compensation claim in June of 1982.
14. Plaintiff did not voluntarily retire from defendant-employer. Plaintiff retired from defendant-employer because he was unable to do the work assigned and because defendant-employer had, itself, taken him off of his last assigned job, the robotics' job, and had presented his case to the medical committee, and it was the medical committee then who determined that he was not totally and permanently disabled but did not reassign him to any work and said that he had to pursue a regular pension.
15. Subsequent to plaintiff's involuntary retirement from defendant-employer, he retained work restrictions from his physician who was of the opinion that the plaintiff could return to eight hours work but he was not to lift anything over five pounds with his left hand, that he could only use his right hand intermittently, and he was not to do any type of crawling. He otherwise had general hand and arm restrictions which prohibited tasks involving fine manipulation or repetitive movement and restricted pushing and pulling. Plaintiff was also restricted from being subjected to cold conditions or to high-speed production work. The jobs that the plaintiff had previously performed with defendant-employer were high-speed production-type jobs which required repetitive use of his hands and arms.
16. Plaintiff wears a support brace on his left hand. He cannot pick up items or grip items with his left hand and he could not even do a task as simple as opening a jar. With respect to plaintiff's right hand, lifting even five pounds causes him trouble, but as long as he does not use it, he does not have too much problem with it. However, once plaintiff begins to use his right hand, it goes numb on him and even goes numb while holding the phone or driving or sleeping. Cold temperatures effect his hand. Plaintiff wore a TENS unit for a while as prescribed by Dr. Bevin at North Carolina Memorial Hospital.
17. Plaintiff is not able at the present time to perform any of the previous jobs which he had with defendant-employer due to the conditions of his arms and wrists.
18. Plaintiff receives $466.00 per month from defendant's pension plan. This money is being paid to the plaintiff pursuant to defendant's contentions that plaintiff voluntarily sought retirement from defendant-employer when his medical or disability retirement was denied.
19. Plaintiff has not, as of the date of the hearing of this matter, been rated by his treating physician, even though his treating physician opines that the plaintiff has reached maximum medical improvement and may return to work with certain restrictions as set forth on Plaintiff's Exhibit 4 received into evidence at the hearing.
20. Plaintiff desires to work and he is willing to submit to whatever type of medical care or rehabilitation program as his physicians may prescribe so as to effect a cure or give relief of his symptoms of carpal tunnel syndrome and to diminish his period of disability.
21. Plaintiff is considered by the undersigned to have made a sufficiently reasonable effort under his circumstances to obtain employment in that he attempted to return to his employer repeatedly and attempted several different types of jobs which he was ultimately unable to perform and from which defendant's own medical department ultimately removed him. Beyond this, plaintiff has been incapable, because of the pain he is experiencing to make further efforts to obtain employment on his own. Defendant has offered no vocational rehabilitation efforts, even after its own medical department took plaintiff out of work. Thus, again, the undersigned find that plaintiff made a reasonable but unsuccessful effort under his circumstances to obtain employment up until his hands gave him too much trouble to continue his attempts.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a result of plaintiff's admittedly compensable carpal tunnel syndrome which arose out of conditions and circumstances directly related to his employment, which employment placed him at a greater increased risk of obtaining carpal tunnel syndrome as compared to members of the public generally not engaged in such employment, plaintiff has been rendered temporarily totally disabled, said period of temporary total disability having commenced on November 15, 1992 when he was taken out of work by defendant-employer's physician's assistant and when his claimed case of disability was submitted to the company's medical committee at their corporate offices in Wilmington, Delaware. Plaintiff has not returned to work and remains temporarily totally disabled.
2. This Opinion and Award does not address the issue of plaintiff's permanent partial disability, if any, since he has not been rated by his treating physician. Further, plaintiff has not been released by his treating physician, but although he has been allowed to return to work, defendant-employer had not provided work for the plaintiff and there is no convincing evidence in the record from either of the parties that the plaintiff is capable of doing or performing any type of gainful employment. Plaintiff contends that he is not capable at this time of returning to work, and defendant has taken the position that the plaintiff voluntarily retired from the company. In addition, as plaintiff has to date made reasonable but unsuccessful attempts to return to work, he remains disabled. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Subject to counsel fee, defendant shall pay plaintiff temporary total disability compensation benefits at the rate of $386.67 per week, commencing November 15, 1992 and shall continue such payments until the plaintiff returns to work or until further orders of the Industrial Commission. As much of said compensation as has accrued shall be paid in a lump sum without commutation. Defendant is not entitled to a credit for payments made under plaintiff's retirement/pension plan.
2. Defendant shall pay all medical expenses incurred by the plaintiff as a result of his carpal tunnel syndrome when bills for the same have been submitted through the defendant's self-insured administrating agency to the Industrial Commission and approved the Commission.
3. A reasonable attorney's fee in the amount of 25 percent of the compensation awarded to the plaintiff is approved and allowed for plaintiff's counsel. As to the portion of said fee that has accrued, the same shall be paid in a lump sum directly to plaintiff's attorney. As to compensation payable in the future, every fourth check of compensation shall be paid directly to plaintiff's attorney.
4. Defendant shall pay the costs.
This the __________ day of ________________________, 1994.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________ CHARLES A. CLAY DEPUTY COMMISSIONER
S/ __________________ J. HAROLD DAVIS DEPUTY COMMISSIONER
JHB/nwm 01/24/95